IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE<br>NO. 4:11-CR-036-HLM-WEJ |
| MARK MASON ALEXANDER, | |
| Defendant. | |

## **NON-FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on defendant's Motion to Suppress Evidence [41] and Supplemental Motion to Suppress Evidence [50].[1] For the reasons explained below, the undersigned **RECOMMENDS** that said Motions be **DENIED**.

## **I.   BACKGROUND**

Defendant, Mark Mason Alexander, is charged with participation in a conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., all in violation of 18 U.S.C. § 371. (See Indict. [1].) The Indictment accuses Mr. Alexander, in his position as majority owner of, and Chief

---

[1] The Supplemental Motion was erroneously filed as a supplemental brief [47]; the clerk corrected the error and re-docketed it.

Operating Officer for, a Dalton, Georgia-based business called Hydrajet Technology, LLC, of selling equipment to the Republic of Iran in violation of a trade embargo established by IEEPA and various Executive Orders. (Id. ¶¶ 1-12.)

Mr. Mason filed a Motion to Suppress Evidence [41] on April 2, 2012, seeking to suppress all fruits of (1) the allegedly unlawful stops, searches, and seizures of his person and property upon returning to the United States from abroad;[2] and (2) any statements he is alleged to have made on the grounds that they were the fruit of the unlawful seizure. (See Mot. to Supp. 1.)

During a telephonic pretrial conference on April 17, 2012 [44], the Court addressed that Motion to Suppress Evidence. When the Government represented that it would not be offering at trial any evidence obtained from the border searches conducted of Mr. Alexander's person and property,[3] the undersigned inquired of

---

[2] The Court held a Jackson-Denno hearing on February 9, 2012 [31]. The transcript ("Tr.") of that hearing shows that Mr. Alexander was the subject of two border searches: one on July 3, 2008 (at Hartsfield-Jackson International Airport in Atlanta) and the other on March 16, 2010 (at the Orlando International Airport). (Tr. [36] 7, 14-15.)

[3] None of the statements the Government identified at the Jackson-Denno hearing were made by Mr. Alexander during a border search. (See Tr. 3-4.)

2

defense counsel whether the Motion was moot, and directed that it be supplemented within ten days or it would be denied.

Defendant then filed a Supplemental Motion to Suppress Evidence [50] raising three issues: (1) per the discovery provided, the Government will be unable to move forward with at least two overt acts described in the Indictment if it does not introduce evidence obtained from the border searches; (2) much of the other evidence in the case (i.e., physical evidence and statements made by Mr. Alexander) are so interconnected and without sufficient attenuation from the border searches to be admissible as from an independent source; and (3) because the origin of much of the evidence is vague and unclear, a hearing is necessary to determine what evidence was discovered during the border searches. (Def.'s Supp. Mot. 2.)

The Government filed a Response [49] opposing a hearing, first arguing that the defendant's Motion fails to allege facts which establish that he is entitled to have the evidence suppressed. Moreover, the Government repeats that it does not intend to use evidence obtained at those border searches. (Gov't Resp. [49] 3.) With regard to the three points raised in defendant's Supplemental Motion, the Government contends that (1) the Indictment dose not rely upon evidence obtained from the border searches (id. at 7-10); (2) because there was no unlawful conduct, the

3

independent source and attenuation exceptions are inapplicable (id. at 10-15); and (3) the defendant may not use a suppression hearing as a mechanism to obtain discovery about the Government's case (id. at 15-17). The defendant filed a Reply [51] reiterating his previous arguments.

## II.  **DISCUSSION**

The defendant complains about two warrantless searches and seizures that occurred when he entered the United States at the Atlanta and Orlando international airports, arguing that agents had no probable cause to believe that he was transporting contraband. However, warrantless searches at international borders of the United States may be conducted without any suspicion of criminal activity. United States v. Ramsey, 431 U.S. 606, 619 (1977); see also United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985) (due to this Country's strong interest in national self-protection and territorial integrity, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant"); United States v. Stone, 659 F.2d 569, 572

AO 72A
(Rev.8/82)

(5th Cir. Unit B 1981) ("neither a warrant nor any level of suspicion is required to search vehicles, vessels, persons or goods arriving in the United States").[4]

A border search may also be conducted at any place which constitutes the functional equivalent of the border. United States v. Garcia, 672 F.2d 1349, 1363 (11th Cir. 1982). Three factors determine whether a search has occurred at the functional equivalent of the border: (1) reasonable certainty that the border was crossed, (2) lack of time or opportunity for the object to have changed materially since the time of crossing, and (3) performance of the search at the earliest practical point after the border is crossed. Id. at 1363-64. The Atlanta international airport is the functional equivalent of the border. United States v. Santiago, 837 F.2d 1545, 1548 (11th Cir. 1988). Orlando's international airport would also qualify as such. See United States v. Hill, 939 F.2d 934, 936 (11th Cir. 1991) (places such as international airports within the country are considered the functional equivalent of a border for Fourth Amendment purposes).

Given that the Government's agents did not need probable cause to seize the defendant and search his personal property at the border, there was no violation of

---

[4] Decisions rendered after September 30, 1981, by a former Fifth Circuit Unit B panel are binding precedent in the Eleventh Circuit. E.g., KMS Rest. Corp. v. Wendy's Int'l, Inc., 361 F.3d 1321, 1325 n.2 (11th Cir. 2004).

his Fourth Amendment rights. Moreover, given that the Government has represented that any evidence seized from Mr. Alexander or any statements that he may have made during those border searches will not be utilized in this prosecution, there is nothing for this Court to suppress. See United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (per curiam) (district court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief).

None of the three arguments defendant makes in his Supplemental Motion change this result. First, it is clear from the exhibits attached to the Government's Response that the Indictment does not rely upon evidence obtained solely from border searches. (See Gov't Exs. 2 [49-2] & 3 [49-3].) Second, because there was no violation of the defendant's Fourth Amendment rights at the two border searches, the independent source[5] and attenuation[6] doctrines do not apply. Finally, a hearing

---

[5] "Under the 'independent source' doctrine, the challenged evidence is admissible if it was obtained from a lawful source, independent of the illegal conduct." United States v. Davis, 313 F.3d 1300, 1303 (11th Cir. 2002) (per curiam).

[6] "[C]hallenged evidence will be admissible under the 'attenuation' doctrine if the causal connection between the constitutional violation and the discovery of the evidence has become so attenuated as to dissipate the taint." United States v. Terzado-Madruga, 897 F.2d 1099, 1113 (11th Cir. 1990).

6

is not necessary to determine what evidence was discovered during the border searches. The Government has already identified which items produced in discovery came from the border searches. (Gov't Resp. 15-16.)

### III. **CONCLUSION**

For the reasons stated above, the undersigned **RECOMMENDS** that defendant's Motions to Suppress Evidence [41, 50] be **DENIED**.

**SO RECOMMENDED**, this 18th day of June, 2012.

*/s/ Walter E. Johnson*
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

7

AO 72A
(Rev.8/82)